Good morning, your honors. May it please the court, Guy Talia on behalf of the appellants. With the court's permission, I'd like to reserve three minutes, if I may, for a rebuttal. This is a relatively straightforward appeal, and reversal is required here because the district court erred in holding the plainest litigation of the right to represent a class is an act inconsistent with proceeding to adjudicate their individual claims on the merits in arbitration. To understand why that ruling was an error, we look to the California Supreme Court's decision in Gentry v. Superior Court. In that decision, the California Supreme Court held that in order to properly vindicate the statutory claims at issue here, that is, the claims for unpaid overtime under Section 1194, as well as claims under the Prior Attorney General Act of California, plaintiffs must be allowed to proceed on a class basis or at least attempt to proceed on a class basis. Here, the arbitration agreement. Why is that true? I'm sorry? Why is that true as a matter of, say, Federal law and such? Why would that be true, that they have to proceed on a class basis? Obviously, they don't. They're not going to. That's correct. They don't have to proceed, but they need to be afforded. So if I have lost, what, $1,000 in wages, I take it I can arbitrate for my $1,000, right? That's correct, Your Honor. Now, why is it he has to be able to? Of course, we know the Supreme Court of the United States doesn't agree with that theory, but that's neither here nor there. Well, I don't know what they don't agree with. I don't think Concepcion actually defeats Gentry, but, again, that's probably a separate issue we can get into, if you like. But the reason why they need to be at least afforded the opportunity to proceed on a class basis for such claims is because these statutes are not merely seeking unpaid wages for these people. These are in the nature of a public interest. They not only are looking for their unpaid wages, but the purpose of these statutes is to spread hours. It's to give employers an incentive, a financial incentive to hire more people by making them have to pay more for overtime. An additional public interest in these statutes is that they promote competition. Why should employers who decide not to pay their employees and violate the law time and a half for overtime get an unfair advantage over people, employers that do follow the law? So there's public interest rights in these statutes that are involved, in addition to people's just claim for their $84,000 in wages. And that's why they at least need to be afforded the opportunity in order to properly vindicate these rights to the state. You could say that's perfectly general, right? So no matter what, say, going forward from today, anybody who has an individual arbitration agreement certainly can walk into district court and commence a class action and litigate it for three, four years, however long it takes. And when it turns out he doesn't get class action, he can go back and arbitrate his individual claim, because everything you've said a minute ago applies to that case just like that. Correct? Is that your point? Is that your position? That's all I'm asking. I think there's a distinction between the overtime statutes and any other claims, like the consumer claims. Of course. We're talking about a case kind of thing. Yes. You'd say always. You always go in. You have yourself a class action. You do all the discovery you want in your class action, and if class action doesn't take off, then you go back and arbitrate your individual claim. I would say that is my position. That's correct, Your Honor, unless the arbitration agreement provides for some sort of class adjudication. Of course. Right. Yes, that's correct. That's my position, Your Honor. Okay. I understand. It seems to me that really the only issue here, or certainly the salient issue, is that whether the district court erred in concluding that the plaintiffs waived their rights to individual arbitration. And so when you're looking at waiver, you've got three things that you look at. And the first one is knowledge of an existing right to compel arbitration. The second, acts inconsistent with the existing right. And third, prejudice to the party opposing the arbitration. Now, I know that you've contested that they weren't aware of that. I'm hoping you're really not hanging your hat on that anymore. That certainly did not seem to be your strongest argument. I don't think it's our strongest argument. That's correct, Your Honor. I think the crux of this appeal is whether we performed acts inconsistent with the rights to individual arbitration by pursuing class litigation. I do. I guess I sort of see the crux as more the prejudice side of it. And there's a Seventh Circuit case that sort of deals with that issue. So maybe you can tell me. For me, you don't need to waste a lot of time on the first one. But prejudice is where I would see you might have your strongest argument. Well, that's true. I mean, obviously, regardless of whether we could have ‑‑ I mean, class issues are something that defendants were going to have to deal with in this case. And I think that the lack of prejudice is demonstrated by the procedural posture. If we don't compel arbitration, we go back and we litigate our individual claims. So where is the prejudice? Defendants have successfully defeated our class claims. And regardless of whether we proceed in arbitration or in litigation, we're going to be still adjudicating our individual claims. It might depend. You might have done an awful lot of individual kind of discovery. You might have required them to come up with all kinds of information and documentation. I don't know if you did. Nobody's seen the ‑‑ it's not very clear at the district court what happened. Now, you could have had just a plain, simple, I suppose, kind of class action attack. Or you might have done what I think often happens in class action. You might have done an awful lot of individualized discovery, essentially, partly to try to prove that you had a commonality, et cetera. Well, there's certainly some overlap between the class issues and things that are going to relate to individual issues. But I don't think there's any dispute, really, in this case, that all of the discovery and litigation that has occurred thus far was specifically directed at whether defendants had a policy, a common policy that applied, that was generally applicable to all of the applicants. Now, that, you know ‑‑ Well, what would be prejudice, though? All right, I think in California, just because you file a lawsuit, that's not ‑‑ that doesn't say prejudice. But what would be prejudice? I think Judge Fernandez was touching on certain types of discovery information that you wouldn't be entitled to had you ‑‑ were you doing the arbitration might be a basis for prejudice, right? Well, I mean, I think that would be, but I think that the ‑‑ I mean, it's got to mean something. So ‑‑ Right. Prejudice here would be if we were seeking to re-adjudicate issues that we litigated. And that's just simply not happening here. It can't mean that. I mean, the prejudice prong can't just mean that, can it? Well, I mean, it's ‑‑ It doesn't mean filing a lawsuit for some strange reason. I walk in and I know I have a ‑‑ I know I have an arbitration agreement and, yes, I file a lawsuit. That doesn't waive it. Okay, fine. Well, I mean, if you look at it in a vacuum, obviously, you know, we've invoked the litigation machinery here. We're not disputing that. And, you know, defendants have ‑‑ we've gone through litigation and they've expended funds in defending against that issue. But so if you look at prejudice in a vacuum in that sense, then, you know, they arguably have been prejudiced. If you look at prejudice in terms of what have they incurred here that they wouldn't have been able to avoid, there was no class arbitration process available. But as I've explained under Gentry, the procedure at that point, if the arbitration agreement doesn't cover class arbitration, then you still have the right to do that. So your options are either, of course ‑‑ In your motion for reconsideration before the district court, what did you argue to the district court constituted a lack of prejudice? I think it was the same argument we're making now. We always argued that class arbitration was not available under the agreement. So our two options at that point were either to force class arbitration under Gentry. That became eliminated after Stolt-Nielsen. So Gentry also provided for a second option, which is to go to court and proceed with your class claims. And what is your view of your opponent's view on the prejudice question in answering your motion? I think our opponents are just simply saying because they had to defend litigation, they've been prejudiced. Over three to five years. Correct. Going back to my brother's question, do we know at this point, was there any discussion before the district court of the nature of that discovery process? Again, I think, I mean ‑‑ Of course, the district court was aware of it. Sure, the district court was aware of it. Was there any discussion of it at the motion for reconsideration? I don't believe that was discussed. And, Your Honor, defense counsel, a very skilled counsel here, if that, if they were, if there was any dispute as to what was litigated was going to be re-litigated again in individual arbitration, they surely would have made that argument. And it's not, there's really no dispute here. No, they've never, they've never raised that as part of their prejudice prong, that they're going to be doing ‑‑ Looking to the district court's order, Judge Ilston said that if there's a, if there's a dispute, the defense has shown they've met their burden, that they were prejudiced by the time and expense. Am I right? Yes. And I think my understanding of the district court's analysis here was that in its initial decision, the district court seemed to view the arbitration agreement as void, completely void. Now, that's something that we don't, we didn't really necessarily agree with, that it was completely void and unenforceable, and therefore, there was no option but to litigate. And then in her latter ruling, I think she found that since there was an enforceable arbitration agreement, she didn't make a distinction between litigating class issues and litigating individual issues. So I think she really held, as soon as there is an enforceable arbitration agreement, the fact that we went to litigation instead necessarily prejudiced defendants, because there was an enforceable agreement, we could have individually arbitrated from the outset in her view, and therefore, proceeding to class litigation was a separate and distinct claim and right than litigating your, adjudicating your individual claimant in the merits. The Supreme Court has held that in the United States Parole Commission v. Garrity, that they're two very distinct and separate rights, and they've even touched upon it again in Concepcion, talking about the fundamental differences in those. So you can't just say. But it seems to me there has to be some type of, okay, we're going to have to have Okay, so we know that just filing the lawsuit is not enough. And that it would appear that if you look at the Seventh Circuit logic in Iowa Grain v. Brown, though not binding, it's saying that you haven't necessarily, just because you're pursuing the class arbitration. So you're saying you're pursuing the class arbitration, you file a lawsuit that that's not enough. There has to be some case out there. Well, I mean, there's got to be something out there that would qualify as waiver. And your argument seems to be so broad that you're just saying, well, we can do whatever we want, or. No, I think that if we had, once class certification was denied, if we continued to litigate our individual, our plaintiff's individual claims on the merits in federal district court, and then somehow at some point decided this isn't going well here, we don't want to do all this discovering depositions, we're going to invoke our right to compel individual arbitration. At that point, I think defendants would have a very good argument to say, hey, wait a minute, you've been litigating your individual claims here. You can't all of a sudden now go to arbitration. But we never did that in federal court. It was solely related to class issues. And as soon as those were decided against us, we're trying to do what defendants themselves asked us to do. They have an arbitration agreement. And arbitration has been considered the proper forum for individual claims, because it's, for all the reasons, it's less expensive, it's more streamlined. I see that I have two minutes left. Scalia. In Iowa Grain, the Seventh Circuit noted that under its own precedent, there is a presumption that if you use an alternate methodology of litigation, there is a presumption that you have waived the arbitration. Is there any such authority in the Ninth Circuit? Is there such a presumption in the Ninth Circuit? Your Honor, I'm not that I'm aware of. I don't know the answer to that question. But I can answer it affirmatively one way or another. So I apologize for that. I'm certainly happy to. You're seeking reversal, am I right? Correct, Your Honor. Why don't we, should you be seeking reversal or vacation and remand to permit the district judge, having had the methodology set forth, develop, look into this question of prejudice under proper guidance? Well, I think, I don't know that there's anything for the district. All we have is her conclusory statement, you know, about prejudice when you get down to it. Right. I mean, I think I'd go back to what I was saying earlier. I don't know that there's anything for her to really look at again, because we just don't think there was any prejudice here. The invocation of the litigation machinery. But you'd take that over in affirmance, I bet. Well, yes, you'd take that over in affirmance, absolutely. That's kind of the poke in the eye with a sharp stick. Okay. You've got, I'll give you a minute for rebuttal. All right. Thank you, Your Honor. Good morning. Good morning. May it please the Court. Lonnie Williams on behalf of the appellees. Unless the Court wants me to address it, I'm going to focus on the third element of the waiver based on your questions. I have been prepared to talk about the first two, but I'm going to focus primarily on the waiver argument. Excuse me, the prejudice argument. Counsel made it clear that what they did in 2007 and for five years thereafter was separate and apart from individual litigation or arbitration. They made that decision with the knowledge that they could pursue individual litigation. By definition, they focused their time and my client's time on obtaining a class. Those efforts have nothing to do with the individual claim of Mr. Bernanke. That effort that my client was forced to expend in defending the class is under Ninth Circuit authority part of the idea of prejudice. When we look at the ruling that the district court made, prejudice was not necessarily discussed in her original order because you never got passed under her original order the first criteria. Wait a second. How in the world, if I understand what you're saying, you're saying that Mr. Bernanke could have brought a class action and been pursuing it as the person pursuing the class action, at the same time could arbitrate his individual claim with you and presume, let's say, assuming you did Big Naughty, he could actually collect on his individual claim or, on the other hand, he could have been told you have no individual claim and could keep pursuing his class action? Is that your point? No, sir. My point is that they have acknowledged that they went a separate way. That separate way was the class action, as opposed to individual arbitration. I understand what they say, and I'm just trying to explore the interesting result that you're accepting, that they actually do have a totally separate claim for class action. No, I'm not saying that. It's easy. Isn't a class action a way that one accumulates individual claims and tries to get them all, and that's how you beat people over the head? Isn't that what they are? Let me start again, because I'm not being clear. On the issue of prejudice, the effort that went into this case for five years to establish a class has nothing to do with the pursuing individual claims. That is prejudice to my client, because my client under the FAA had a right to the agreement. But I don't think you have any case to support that. I mean, I think when you we have to apply California law on some level. I agree. Okay. So it seems to me that the present state of things is filing the litigation, that you can't show prejudice just based on that. And then if all they did was pursue class certification, I'm not sure that's enough. And then I think Judge Ripple made an interesting point. I mean, we don't have precedent in the Ninth Circuit. Counsel, I think, you know, wasn't able to cite anything, because I think there isn't anything.  So in this record, what do we have showing prejudice? We have. I mean, we don't have case law that says what you're telling us you want us to do. I'm not sure I agree with you, Judge. Okay. I think when you look at this Court's recent decision in Gutierrez, that's what's decided in May of this year, that we submitted to you supplemental. But Gutierrez raises it up on appeal. But Gutierrez talks about prejudice. And the prejudice you're looking at doesn't matter. Gutierrez talks about Fisher, they talk about Hoffman, and although they're analyzing it post-appeal or post-trial, they talk about the same factors. And when they talk about those factors, what they do is they focus on things that only happened because they didn't move for arbitration timely. And that's the analysis I'm making. What did my clients suffer because they waited for five years to seek individual arbitration, which is what they saw in front of Ilsen? So what we, if you look on page 11 of that. So you suffered three to five years of having to litigate, right? Exactly. Okay. What else? Well, all of the pleadings, all of the depositions that went solely to the class issue as opposed to the individual arbitration issue they sought at the end, all of those are similar to what this court outlined in Gutierrez and found, based on three to five years of activity, prejudice. It doesn't matter that it was post-trial here. And so what you look at is you just take the circumstances. You could have a case in which, although it may have been class, the focus, maybe we stipulated. Doesn't the timing have to matter a little bit on prejudice? Timing? Yeah. Absolutely. Because you're saying in Gutierrez it's way later than here. Oh, I disagree, Judge. It's three to five years in Gutierrez. In our case it was five years. No, not in terms of, but procedurally it's later in Gutierrez. It's later in terms of, it's later in the sense that the appellee, the appellant in Gutierrez waits after they had lost. In this case, they waited until they lost. They waited until they lost the class until they came in and said, now I want to arbitrate. That's the exact same situation in Gutierrez, and they waited until they had judgment against them. In the record here, in terms of the discovery was done, what does the record show about discovery that was done that was unusual relative to that discovery that was done that wouldn't be done in the arbitration? It is undisputed, and the record shows this, that all of the discovery was class-related. There was not, we didn't do individual discovery. It was all related to... To whether the class would be certified. Exactly. Okay. And therefore, that constitutes part of the prejudice, because that work, whether or not someone was subject to a policy in New York, had nothing to do with whether they would be subject to a policy in Southern California. And I think it's important how they change the case over time. Remember, this started out as a national class for all states, and they whittled it down so that at the end it was only California. All of that effort, all of those amended pleadings, all of those motions went to an issue having nothing to do with individual arbitration. That is the prejudice we suffered, together with the amount of time that it took. It wasn't six months. It wasn't a year. It was, in essence, after they lost. So you get into the second bite of the apple analysis that this court, the Ninth Circuit, has looked at. They waited until they had nothing else to do. They could have tried to go individual cases. Instead, they decided to go with arbitration, but only after they had already lost five years of litigation. How do you get around those California cases that seem to say that the mere fact you had to take part in litigation isn't enough to show prejudice? And I agree with that. How do you deal with those cases? In those cases, you don't have five years of litigation and you don't have the hundreds of thousands of dollars, which is established in the record by way of affidavit as part of the motion that was expended. You don't have those situations. You may have a situation where a little bit was expended, but you also don't have a situation where what was done in the litigation was totally unrelated to what they're now trying to do. Does that make it prejudicial or not prejudicial? It makes it prejudicial because we should have been allowed to spend that time and money with defending the individual arbitrations as opposed to doing the action. It's not the filing of the action. Nine of itself. State Agnes would say no, it's not the filing. I agree. But that was only about four months or something and they were only, they were arguing about collateral matters, right? Correct. But it's a short time. You see, the whole thing is a short time. Correct. Okay. I'm sorry. Go ahead. No, you go ahead. In Iowa Grain, the Court said at the end of its opinion that the totality of the circumstances is really what counts. As you look at those California cases on harm that you have to get around, do they talk in terms of totality of circumstances? They do. But in all due respect, I don't think you've had a case, even California in the Ninth Circuit, other than Guterres, the recent one, that's like this case. You don't have any of those cases where there have been three, four, five years of for the arbitration. You don't have the type of expenditures and you don't have the changes in what they've done in all those years. And so this case is much akin, although it is post-trial, to your recent case, because all of the things other than trial happened when the Court was looking at the prejudice factor. And you don't have those in most cases. You have a short time, someone moves, and they found no prejudice, but you don't have, you know, the 60, 70 depositions and all of those things that the record shows here. Okay. You have time, you have money, you know, all of those things. But let me ask you, let's say, let's just assume for purposes of argument that prejudice, you have to show something more. How has your ability to defend against individual arbitrations claims been compromised by the prior litigation, specifically? I think you go directly back to the FAA, which says that what we have to enforce is the right to enforce your agreement. Our agreement, which is of record, says that the notice in arbitration has to happen quickly. One year. They have to tell us within one year of the time of the event we want to arbitrate. Why? It's all in the Nelson Stola case. Okay. But these are sort of speculative. Tell me specifically in your case. How have you been harmed? We've lost four years, and now seven years, of the ability to find witnesses, to locate documents under any situation. The requirement of maintaining these records is long since gone, and so we've lost the ability to effectively defend individual arbitration. We have an agreement, one year. We're on. We're doing it. Now they waited five years to even suggest it. That, by definition, is prejudicial. People pass away. Documents go away. People's memory go away. All of that, with respect to our ability to defend, is gone. Wait a minute. And that's our agreement. Wait a minute. You're defending a class action request, right? They're trying to get a class action. And you all were so confident that you were going to win that, that you, in terms of any individuals having to prove up claims within that, you just let the records go, didn't try to find witnesses. Is that true? No. What's true is we didn't even know who we were talking about. It wasn't like everyone was there. This is the class, and they've always taken the position. Totally. You knew these guys were there, so. Oh, yeah. One or two. And you let their records go, too? No. One or two, yes. One or two, three people, yeah. We're talking about how many? Five people? Twelve. At this point? At this point. Okay. Twelve people. And so all of those people did not come in at the same time. Secondly, so. Wait a minute. So this should be more fine grain, then? So Mr. Bernanke there. Mr. Bernanke's employment was already, Mr. Bernanke's employment ended well before the lawsuit was filed. Mr. Bernanke was relying on tolling. That's not my question. The point is any records regarding him would have been saved. No. No. Because the lawsuit was filed in 2007. He had left the company, I believe, in 2005. So it exacerbates the problem that existed. Okay. I got you. But I think as a matter of law, waiting five years to assert claims, and in all due respect, we didn't know which of the 600 people might assert claims. And so the idea that we would try to literally maintain records of all of those people who might have done what we now know they did. In other words, we preserved the records of those people who we knew about. But we couldn't have reserved those records of everyone they ultimately wanted to seek arbitration. To refresh my recollection, under the agreement itself, the arbitration, the individual arbitration agreement, could either side request the arbitration? Yes. Was there anything preventing you from requesting the arbitration? When the lawsuit was filed, we made a decision based on the state of the law, including California law, not to seek arbitration, because we knew that the state of the law, we would not necessarily be able to enforce the arbitration. We would not be able to enforce our class arbitration waiver. When that changed, we were so far along, we opted not to do what many of the cases Fisher and other did, and go back and ask for it. We made that decision. How long did you wait after the case law sort of came your way? How long did the litigation, I mean, you made two decisions not to go. Correct. Arbitration. Initially, no one wanted to. And then the second time was? 2010. And then how long did it go on from there? Another year and a half. So that year and a half is on you then. No, because I have a right to make a decision not to seek it, as long as I don't try to change that decision. In other words, I'm living with my decision. The fact that I chose not to seek arbitration does not benefit the plaintiffs in this case, because they had to make their own decision and live with it. We lived with it. And at some point, maybe we would have wanted to, but we thought we had waived it at that point, because we knew after the Supreme Court reversed and basically said that they can't force class arbitration, which was in 2010, we could have, as many of the cases we're talking about did, sought individual arbitration, but we decided not to at that point. I'm having a hard time seeing why you didn't seek individual arbitration. You know, was there really ever any question here in California about the severability of the right to individual arbitration? No. We believed, and we have no reason not to believe, that we could have enforced it. But at that point, you have to understand, this was not the only lawsuit. There were 30 lawsuits around the country filed by these same people. And at that point, we had a mechanism in place to handle them. And that mechanism had cost a lot of money, and we decided not to change everything and, in essence, start anew. It was a strategical decision my client made, in part based on what he'd already expended. But we made it, and we've never backed off in trying to change it. All right. Unless my colleagues have any additional questions, we've taken you into overtime. Thank you. Thank you. You have one minute for rebuttal. Thank you, Your Honor. Just briefly, I would like to say I think my colleague has answered one of the questions that you were asking to me earlier, and that is, you know, whether there was some sort of individual discovery or individual litigation that happened. And the answer is resoundingly no. There was absolutely no duplicative litigation that occurred before. It was all class-related issues, which is exactly our point. And they say that that's why there is prejudice, and we say that's exactly why there is not prejudice. We're not seeking a second bite at the apple here. We litigated the class issues. Once that was decided, as was our right under Gentry, they could not, in our opinion, stop us from doing that. They didn't acquiesce in that, like he was claiming there at the end. Is there any argument that you would make relative to the fact that they made a strategic decision not to go individual arbitration at two different points? I mean, how does that factor into your argument? I think that was a strategic decision, and that factors that there was no prejudice to them. Well, I don't want to make your arguments for you, but I'm just curious. Do you think, does that say they're talking out of both sides of their mouth? Or how do you factor that into your argument? Well, I guess back to our argument, I think they have been doing a lot of talking out of both sides of their mouths here. They would have absolutely brought, I think, a motion to compel individual arbitration if they thought that they could. They did it in Indiana as soon as we brought that action there. They didn't wait for the class issues to become resolved out there. I think it was because of the state of the California law. Despite Concepcion, Discover Bank and Gentry I view as different conceptual decisions, and I don't think that they thought that they could have done it at that point. That was a strategic decision on their part. Well, but if they thought they legally couldn't do it, then that, you know, we don't like people wasting our time. So that doesn't, that would be a reason not to hold it against them. All right. There don't appear to be additional questions. Thank you both for your argument. This matter will stand submitted. All right. Thank you, Your Honor.
judges: Ripple, Fernandez, Callahan